IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KRISTEN R.,[1]

    Plaintiff,

v.

ANDREW M. SAUL,[2]
Commissioner of Social Security,

    Defendant.

CIVIL ACTION

No. 19-1089-JWL

**MEMORANDUM AND ORDER**

    Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614(a) of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c(a) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I. Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff filed an application for SSI on February 12, 2016. (R. 26, 204-09). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating her allegations of symptoms and failed to credit the severity of her pain resulting from her somatoform disorder (Pl. Br. 8-12) and erred in his residual functional capacity (RFC) assessment "because he failed to give good reasons to discount Dr. Sheafor's opinions." Id. at 13.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

3

Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II. Evaluation of Symptom Allegations[3]

Plaintiff claims the ALJ found she has severe impairments at step two which included somatoform disorder, but then did not adequately consider her somatoform disorder when evaluating her allegations of pain.  (Pl. Br. 8).  She argues that the ALJ

---

[3] Plaintiff titled this section of her Brief "Credibility Argument."  (Pl. Br. 8).  For many years, the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).

4

failed to consider the effects of somatoform disorder is his evaluation of Plaintiff's allegations of pain and in his evaluation of the medical opinions. (Pl. Br. 10). Plaintiff argues the "decision does not contain an easily discernable credibility analysis," the discussion does not mention Plaintiff's somatoform disorder, and the ALJ relied on Dr. Neufeld's examination of Plaintiff but ignored Plaintiff's physical allegations consistent with her somatoform disorder. Id. (quoting Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) 485 (4th ed. text revision 2000) ("The common feature of the somatoform disorders is the presence of physical symptoms that suggest a general medical condition ... and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder.")).

Plaintiff suggests the ALJ found her "skin sensitivity and hot flashes were not severe impairments because objective medical evidence did not reveal any abnormalities," and argues that "cannot be a legitimate reason to discount [her] allegations of these symptoms" because they are due to a somatoform disorder. Id. at 11. She argues that remand is necessary for the ALJ to answer the real question, "whether the symptoms, or the severity or intensity of the symptoms presented or alleged are intentional or under voluntary control." Id. (quoting Harris-Jackson v. Astrue, CIV. A. 11-1411-JWL, 2013 WL 27640 (D. Kan. Jan. 2, 2013)).

The Commissioner argues the ALJ reasonably discounted Plaintiff's allegations of disabling symptoms. He notes the ALJ discounted Plaintiff's allegations because they are inconsistent with her reported daily activities, her testimony, and the function reports she submitted. (Comm'r Br. 5). He points out that the ALJ discussed Plaintiff's

5

allegations of wrist pain, hot flashes, and skin sensitivity, and that in her application materials and at the hearing Plaintiff complained primarily of wrist pain, but now emphasizes skin sensitivity and hot flashes, which the ALJ also discussed and found did not result in more than minimal limitations within the meaning of the Act. (Comm'r Br. 6-7). The Commissioner distinguishes Harris-Jackson because there the ALJ was concerned with feigned effort and exaggerated symptoms whereas here the ALJ considered Plaintiff's wrist pain, hot flashes, and skin sensitivity and found the wrist pain limited her to frequent manipulative activities and the skin sensitivity and hot flashes resulted in no more than minimal limitations in Plaintiff's ability to perform basic work activities. Id. at 7.

### A. Standard for Evaluating Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[4]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 416.929(c)(3)(i-vii).

## B.     The ALJ's Findings

---

[4] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." The three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on April 24, 2018, when this case was decided.

At step two, the ALJ found Plaintiff has severe impairments, including a history of tenosynovitis of the right wrist, carpal tunnel syndrome, depression, anxiety, personality disorder, and somatoform disorder. (R. 28). He recognized Plaintiff's testimony of skin sensitivity and hot flashes. Id. He noted "the record does not indicate any limitations as a result of these impairments," and found "that these impairments are not severe impairments as defined in 20 CFR 416.920(c) and SSRs 85-28 and 96-3p, in that they do not cause more than a minimal limitation of physical or mental ability to do basic work activities." Id. at 29. In his step three analysis, the ALJ specifically considered Listing 12.07—Somatic symptom and related disorders. Id. He noted that in one function report Plaintiff reported having trouble following instructions and in a later function report she reported no difficulty following instructions. Id. at 29, 30 (citing Exs. 1E, 8E). He noted Plaintiff testified she spends time only with her parents and fiancé, but later reported that she goes to church on Easter and Christmas Eve. Id. at 30. He noted that Plaintiff reported she needs special reminders to perform basic self-care tasks, but later reported she has only physical limitations in performing daily activities. Id.

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 33. He cited additional inconsistencies. "Although in her first function report she reported difficulty handling money, following instructions, and side effects from medications, in her second report she reported none of these issues." Id. He also noted her testimony of activities, some of which are inconsistent with allegations of disability. "She lives with

8

her fiancé. She attended and graduated college. Her medications and therapy help her psychiatric symptoms. She goes grocery shopping. She does the dishes and vacuums. She does laundry." (R. 33).

### C. Analysis

While the ALJ's evaluation of Plaintiff's allegations of symptoms is not contained within one paragraph or one section of his decision, as the court's summary reveals, the evaluation is discernible and contrary to Plaintiff's claim his evaluation does mention the symptoms of wrist pain, hot flashes, and skin sensitivity which are consistent with her somatoform disorder. Regarding skin sensitivity and hot flashes, the ALJ found "the record does not indicate any limitations as a result of these impairments." (R. 28) (emphasis added). Plaintiff's argument that the ALJ found these impairments not severe "because objective medical evidence did not reveal any abnormalities" is not borne out by the decision. Although the ALJ noted negative sudomotor function test and EMG/NCS (electromyogram/nerve conduction study) his conclusion, as quoted above, was that in the end the record does not indicate any limitation from these impairments.

Plaintiff makes a general argument that the ALJ's reliance on Dr. Neufeld's mental status examination does not capture the evidence of physical allegations consistent with somatoform disorder (Pl. Br. 10), but she does not point to record evidence of specific functional limitations resulting from these impairments. Plaintiff points to her reports of pain to several providers and notes providers recorded that she was emotional and dramatic, "quite manic," and writhing in pain and Dr. Sheafor diagnosed somatic symptom disorder. Id. at 8-9. This evidence justifies Dr. Sheafor's

9

diagnosis which the ALJ accepted but does not demonstrate any functional limitation. Moreover, Plaintiff's assertion that Dr. Sheafor "noted an emotional and dramatic affect" and "opined [she] was in genuine pain" is not precisely what that record reveals. Id. at 8 (citing R. 474). First, the record cited contains two "Contact Notes" from New Beginnings Health Care signed by Plaintiff's therapist, Mr. Hagen, not Dr. Sheafor. (R. 474). This can be demonstrated by noting that the prior page contains two "Contact Notes," one signed by Mr. Hagen and one signed by Dr. Sheafor (R. 473) and the record contains an opinion statement with both Dr. Sheafor's and Mr. Hagen's signature blocks and signed by each. Id. at 513. Mr. Hagen noted in the "O[bjective]" portion of his note "emotional, dramatic," and in the "A[nalysis]" portion that "suffering seems genuine." Id. at 474. These facts support that Plaintiff has pain, but they do not require a finding that the pain is disabling and they do not provide a functional limitation.

As the Commissioner's Brief suggests, the ALJ found Plaintiff has carpal tunnel syndrome and a history of tenosynovitis of the right wrist and limited her to occasionally lifting 20 pounds and frequently lifting 10 pounds and to frequent (but not constant) handling, fingering, or feeling. Thus, it becomes clear that the ALJ assessed limitations to account for Plaintiff's pain. An ALJ is not required to assess limitations which would allow an individual to work pain free. The question for the ALJ in evaluating pain is not whether there is pain, but whether the pain is so severe as to preclude substantial gainful activity. Plaintiff has not shown that the record evidence compels a finding of pain so severe as to preclude substantial gainful activity.

Plaintiff's appeal to this court's decision in Harris-Jackson does not require a different result. As the Commissioner's Brief suggests, the court in Harris-Jackson noted that the ALJ in that case based his credibility determination on his finding that the claimant feigned effort on examination and exaggerated her symptoms, but the court found the evidence of malingering or feigning was equivocal. Harris-Jackson, 2013 WL 27640 at *10. Moreover, the court stated the purpose of its discussion was

> to show that the ALJ did not review the evidence and Plaintiff's credibility while being properly mindful of the diagnosis of somatoform disorder, and to show the error in the ALJ's failure to recontact Dr. Moeller to request his opinion regarding both the onset of Plaintiff's somatoform disorder and the severity of that disorder during the relevant time period.

Id., 2013 WL 27640 at *11. Here, on the other hand, the ALJ acknowledged Plaintiff's impairment of somatoform disorder and explained his evaluation of Plaintiff's allegations of symptoms. Although Plaintiff disagrees with the ALJ's evaluation, she has not shown that the ALJ erred in the standard he applied or that his findings are not supported by substantial evidence—that the record evidence compels a different analysis.

## III. The Medical Opinion Evidence

Plaintiff argues the ALJ discounted Dr. Sheafor's opinion because it was on an issue reserved to the Commissioner, it did not include a function-by-function analysis, and it was inconsistent with Dr. Neufeld's mental status examination. (Pl. Br. 13-14). She argues none of these reasons is legitimate. She argues that although Dr. Sheafor opined she has "a combination of disabling and pernicious symptoms that made her unable to sustain her attention toward seeking and maintaining employment [that opinion] fits within the regulatory definition of a medical opinion" and is therefore "not

11

on an issued reserved to the Commissioner." (Pl. Br. 14) (citing Fuller v. Astrue, 766 F. Supp. 2d 1149, 1161 (D. Kan. 2011)). She argued "there is no requirement a medical opinion can be found less credible because the physician failed to provide function-by-function analysis. Neither the regulations or [sic] case law support this conclusion." And therefore, "[t]he ALJ had no authority to dismiss the opinion on this basis." Id. She argues that Dr. Neufeld's examination does not undermine Dr. Sheafor's opinion because Dr. Neufeld also concluded Plaintiff's "capacity to maintain adequate performance over the course of a typical 40-hour work week remained somewhat uncertain given the nature and severity of reported affective instability." Id. at 14-15 (quoting R. 451). She concludes, arguing that the ALJ erred in failing to weigh the June 2015 opinion of the state agency psychologist, Dr. Cohen and made "clear he did not consider any evidence [from] prior to February 12, 2016." Id. at 16 (citing R. 26).

The Commissioner argues that the ALJ properly and reasonably evaluated the medical opinions. He argues the reasons the ALJ gave to discount Dr. Sheafor's opinion are proper and are supported by the record evidence. (Comm'r Br. 8-9). He argues that the ALJ also accorded some weight to the opinions of the state agency psychological consultants that Plaintiff has moderate limitations but accorded Plaintiff the benefit of the doubt and assessed greater limitations based on Plaintiff's allegations of symptoms. Id. at 10. Finally, the Commissioner argues that Dr. Cohen's opinion related to a period before she was eligible for benefits, and the record upon which Dr. Cohen formed her opinion was stale and unclear regarding potential substance abuse during that period. Id.

**A.**     **Standard for Evaluating Medical Opinions**

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[5] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 416.927(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have

---

[5]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. § 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

13

merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2018) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those

factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

## B. The ALJ's Findings

As it relates to Plaintiff's mental abilities, the ALJ assessed Plaintiff with the mental RFC "limited to simple, routine, repetitive tasks with occasional interaction with co-workers and the general public; and she retains the ability to accept supervision on a basic level." (R. 31) (finding no. 4, bold omitted). In doing so, he evaluated the medical opinions of four doctors; Plaintiff's treating psychiatrist, Dr. Sheafor; the consultant psychologist, Dr. Neufeld, and two state agency psychological consultants, Dr. Maddox and Dr. Adams. Id. at 34-36. Considering Dr. Sheafor's opinion, he noted "that an

15

opinion on whether an individual is disabled goes to an issue reserved to the Commissioner and therefore cannot be given special significance, such opinion should still be considered in the assessment of the claimant's residual functional capacity." (R. 34). He discounted the opinion because it was "not a function-by-function analysis," and was inconsistent with Dr. Neufeld's examination. Id. He went on to discount the opinion because it contains no explanation for the limitations expressed, Dr. Sheafor's treatment notes do not contain symptom observations or examinations, and the opinion does not explain how the limitations expressed therein would apply in a work setting. Id. at 35. He accorded no weight to Dr. Shaefor's letter opinion which stated Plaintiff's "condition has been disabling" (R. 446), and minimal weight to Dr. Sheafor's medical source statement. (R. 510-11).

The ALJ considered Dr. Neufeld's report of his examination and accorded it significant weight. Id. at 35. He recognized that Dr. Neufeld acknowledged Plaintiff's "capacity to maintain adequate performance over the course of a typical 40-hour work week remained somewhat uncertain given the nature and severity of reported affective instability," id. (citing 6F/5, R. 451), but accorded significant weight because during the consultative exam Plaintiff

> presented as well-developed and nourished, and she appeared her state [sic] age. Her hygiene and grooming were good. Her voice was clear, and her speech was goal directed and of a normal rate, rhythm, and volume. She made appropriate eye contact. She interacted in a friendly and appropriate manner. Her affect was euthymic, and she smiled and laughed in an easy and appropriate manner. She did not appear distractible, and clinical assessment of attention and concentration revealed no gross deficits. She was able to repeat up to 8 digits forward and 6 digits backward. Her memory for recent and remote material was grossly intact based on the

16

>   range of information she related during the interview.  She was able to
>   name 3 out of 3 objects after a several minute delay.

(R. 35) (citing Ex. 6F/3-4, R. 449-50).

The ALJ summarized the opinions of the state agency psychological consultants, Dr. Maddox and Dr. Adams, who found Plaintiff not disabled, and noted the only difference between the opinions was Dr. Maddox opined Plaintiff could carry out moderately complex instruction whereas Dr. Adams opined she was able only to carry out intermediate level (3-4 step) instructions.  (R. 35-36) (citing Exs. 3A/12, 6A/13; R. 97, 114).  The ALJ noted that he accorded only some weight to these opinions "taking into consideration the claimant's subjective complaints."  Id. at 35, 36.

### C.     **Analysis**

The court finds no error in the ALJ's evaluation of the medical opinions.  Dr. Sheafor's letter opinion that Plaintiff's condition "has been disabling" (R. 446) is certainly an opinion that Plaintiff is disabled and as such is not a medical opinion.  20 C.F.R. § 416.927(d).  Consequently, it will not be given "any special significance."  Id. (d)(3).  Nevertheless, as the ALJ specifically noted, and as this court found in Fuller, it will still be considered as will all medical opinions.  (R. 34); 766 F. Supp. 2d at 1161; 20 C.F.R. § 416.927(b).  While an ALJ is not required by case law or regulation to discount a medical opinion because it does not contain a function-by-function analysis, the ALJ has the responsibility to weigh medical opinions, and whether that opinion explains the functional limitations resulting from a claimant's impairments is a factor tending "to support or contradict the medical opinion" and may be considered and relied upon by the

17

ALJ. 20 C.F.R. § 416.927(d)(6). Plaintiff's final argument that Dr. Neufeld also concluded Plaintiff's "capacity to maintain adequate performance over the course of a typical 40-hour work week remained somewhat uncertain given the nature and severity of reported affective instability" (Pl. Br. 14-15) (quoting R. 451), ignores the fact the ALJ specifically recognized the reservations expressed by Dr. Neufeld and determined they were outweighed by the results of the mental status examination Dr. Neufeld performed. Moreover, as the Commissioner's Brief suggests the ALJ accorded some weight to the medical opinions of Dr. Maddox and Dr. Adams which tend also to support the ALJ's evaluation. Because the record evidence supports the ALJ's evaluation and does not compel the evaluation preferred by Plaintiff, the court may not reject the ALJ's evaluation. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Finally, Plaintiff's appeal to the ALJ's failure to evaluate Dr. Cohen's June 2015 opinion does not require remand. Dr. Cohen's opinion appears in a Disability Determination Explanation dated June 18, 2015. (R. 72-84). That explanation reveals it was an initial level determination that Plaintiff was not disabled. (R. 83). There is no evidence Plaintiff appealed that decision and the record demonstrates that it was closed. Id. at 87. Thereafter, Plaintiff filed a new application on February 12, 2016 which is at

18

issue here. There is no record evidence the prior application was reopened or that Plaintiff requested that the application be reopened. That fact explains the ALJ's discussion of the "evidence prior to the period at issue," and his explanation that "evidence prior to the period at issue was not considered when formulating the claimant's current limitations below." (R. 26). There was no error in the ALJ's decision not to evaluate Dr. Cohen's opinion contained in the prior denial decision.

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 24, 2020, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**